UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY, | 3:05-CV-0658-BES (VPC) |
| Plaintiff, | |
| vs. | ORDER |
| ROGER GURR, et al., | |
| Defendants. | |
| AND RELATED CLAIMS | |

Before the court is the motion of Roger and Elsie Gurr, defendants and counter-claimants, ("Gurrs") to compel production of documents and request for sanctions (#32). National Fire & Marine Insurance Company, plaintiff and counter-defendant ("National Fire") opposed (#34) and the Gurrs replied (#39). The court held oral argument on October 2, 2006 and took the motion under submission (#40).

Subsequent to the hearing, the Gurrs filed a supplement to the motion to compel based upon a new privilege log served by National Fire (#45), and National Fire responded with the affidavits of Scott M. Bonesteel (#46) and Martin Shives (#47). For the reasons set forth herein, the Gurrs' motion (#32) is denied.

### I. Procedural History

This action arises as a result of an underlying state court action ("underlying action"), which concerned a large construction defect claim brought by various homeowners and the project general contractor. The Gurrs were the roofing subcontractor, and it was alleged that as a result of their

substandard work, several of the roofs on the project homes were blown off during a wind storm (#32/34). The Gurrs tendered their defense to three liability insurers, Monticello, Federated, and National Fire (#32/34). Eric Papp, Esq. was retained to represent the Gurrs in the underlying action with Monticello and Federated initially providing the defense (#34). In April 2004, the state court judge granted class certification and bifurcated the case into those portion of alleged damages arising from the Gurrs and the remaining, individualized claims of homeowners. *Id.* The roofing litigation relating to the Gurrs was called "Justus I," and the remaining claims were called "Justus II." *Id.* It was not until April 2005 that National Fire joined the defense. *Id.* It is undisputed that National Fire advised the Gurrs that pursuant to its policy, the aspects of the case concerning Justus I consisted of uncovered damages for which National Fire did not have an obligation to defend or indemnify. *Id.* The other insureds also asserted similar policy defenses. *Id.*

During the summer and fall of 2005, the parties engaged in a series of settlement conferences to resolve the underlying action, and in mid-August 2005, National Fire, Federated and Monticello jointly retained Martin Shives as coverage litigation counsel. *Id.* The scope of Mr. Shives's representation of the three insurers was to address coverage issues existing between the Gurrs and the insurers and to prepare for potential litigation to be filed by Mr. Shives on behalf of the insurers (#34, affidavit of Martin Shives). Mr. Shives accompanied carrier representatives to various settlements conference, and, ultimately, both Justus I and Justus II settled (#34).

In this action, National Fire seeks recovery of more than $500,000 it paid in settlement, an amount it alleges it did not owe under the National Fire insurance policy. *Id.* National Fire alleges that with the knowledge of the Gurrs' counsel, the three insurers stepped in and paid approximately $1.3 million to settle the case and reduce potential exposure to the Gurrs of a judgment in excess of $5 million. *Id.* The Gurrs did not contribute any monies to the settlement, and by this action, National Fire seeks to recover its portion of the settlement paid out on behalf of the Gurrs. *Id.*

The Gurrs contend that National Fire has no right of reimbursement and that during the course of the underlying litigation, the insurers restricted defense of the Gurrs, failed to monitor defense counsel, and failed to take other actions to insure a proper defense for the Gurrs (#32). The Gurrs

further allege that National Fire demanded that the Gurrs collateralize its portion of the settlement payment, and when Federated and Monticello refused to settle without National Fire's participation, the Gurrs had no choice but to accede to National Fire's demands. *Id.* The Gurrs have also filed a counterclaim for bad faith against National Fire, as well as other associated claims for relief. *Id.*

### A.     The Discovery Dispute

On April 24, 2006, the Gurrs served a request for production of documents on National Fire, which included documents contained in National Fire's claim file. *Id.* The disputed document production requests are as follows:

> <u>Request for Production No. 1</u>: Any and all DOCUMENTS that are contained in or constitute the claim files maintained by YOU with regard to requests for defense and/or indemnification by the GURRS for the UNDERLYING ACTION.
>
> <u>Request for Production No. 2</u>: All DOCUMENTS evidencing or reflecting any investigation made by YOU or on YOUR behalf with regard to requests for defense and/or indemnification by the GURRS for the UNDERLYING ACTION.
>
> <u>Request for Production No. 3</u>: All DOCUMENTS evidencing or reflecting any communications made by YOU or on YOUR behalf between any other insurer of the GURRS regarding the UNDERLYING ACTION.
>
> <u>Request for Production No. 11</u>: All DOCUMENTS evidencing or reflecting any communications to and from YOUR claim managers or on YOUR claim managers' behalf concerning settlement of the UNDERLYING ACTION.

*See* #32, Ex. A.

National Fire responded on May 30, 2006, and included a preliminary statement of general objections and reservations as follows:

> The production of any document by this responding party should not constitute a waiver of this party's right to assert a privilege or objection as to any other document and right to withholding the production thereof. The fact that a document is produced should not be taken as a concession of this defendant's right to withhold any other document pursuant to an appropriate claim of privilege or objection, nor is a concession or waiver of said rights to be implied or inferred by the propounding party.

*See Id.,* Ex. B. National Fire also specifically responded to the disputed production requests as follows:

3

<blockquote>

<u>Response to Request for Production No. 1</u>: All non-privileged portions of the claims file maintained by National Fire with regard to the request for defense and/or indemnification by the GURRS for the UNDERLYING ACTION will be produced.

<u>Response to Request for Production Nos. 2, 3, and 11</u>: All responsive, non-privileged DOCUMENTS, all of which are maintained in National Fire's claim file, will be produced.

</blockquote>

*See Id.,* Ex. B. On June 6, 2006, National Fire produced the documents in response to the request, and accompanying the documents was a privilege log, which noted that the withheld documents came from National Fire's claim file and included the following information: 1) bates-number of document withheld; 2) date of document, if applicable; 3) document description; 4) basis of privilege; and 5) action taken as to each document (#32, Ex. C). Dissatisfied with the privilege log, Gurrs' counsel initiated the meet-and-confer process through a June 26, 2006 letter, which outlined in detail the deficiencies he found in the privilege log (#32, Ex. D). The correspondence attached to the papers on file herein indicates that the parties continued the meet-and-confer process through July and August, which ultimately resulted in National Fire providing a revised privilege log on August 8, 2006 (#32, Ex. D-O).

During the middle of this discovery dispute, the Gurrs deposed National Fire's Rule 30(b)(6) witness, Richard Ratz, on July 11, 2006 (#32, Ex G). The Gurrs' position is that Mr. Ratz's testimony establishes that the claim file contains key documents concerning National Fire's handling of the Gurrs' claim and that Mr. Shives, counsel for National Fire, performed some portion of its investigation of the Gurrs' claim. Therefore, notwithstanding that Mr. Shives is counsel for National Fire, the Gurrs contend they are entitled to those documents in the claims file as evidence whether National Fire acted reasonably in reaching its decisions concerning coverage. National Fire asserts that it has properly invoked the attorney-client privilege as to the majority of documents at issue, and as to a small number of other documents, it has properly invoked other valid privileges.

The Gurrs contend that there are three groups of documents that National Fire should be compelled to produce: (1) the Shives documents (#32, n. 1); (2) National Fire communications (#32, n. 2); and (3) other claim documents (#32, n.3).

4

**II.     Discussion and Analysis**

    **A.     Waiver of the Attorney-Client Privilege**

As an initial matter, the Gurrs contend that National Fire waived any assertions of privilege in response to their document production request because it made no specific objections and "reserved objections" should be treated as untimely. The court rejects this contention. Although National Fire could have been more explicit in asserting its objection to the document production based on attorney-client privilege, National Fire did state in its responses that it would produce all non-privileged documents, and the parties knew and understood that National Fire intended to provided the Gurrs with a privilege log. In fact, the parties had many discussions over the course of the production of the privilege logs about their contents and when they would be produced and supplemented. Based upon these facts, the court finds that National Fire did not waive its objection to produce documents based on attorney-client privilege.

    **B.     The Shives Documents (#32, n.1)**

The central issue regarding these documents concerns the Fed.R.Civ.P. 30(b)(6) deposition of Mr. Ratz and whether his testimony reveals that Mr. Shives not only acted as coverage counsel for National Fire, but that Mr. Shives also served as investigator or claims handler. Mr. Ratz testified about claims handling generally and the extent to which in-house counsel were involved in the claims handling procedure. He testified that the claim file generally reveals how an insurer processes a claim, that he performed the analysis concerning whether the Gurrs were covered under National Fire's policy, and that his analysis may have, in part, been based upon information provided by Mr. Shives (#32, Ex. G at p. 38, lines 21-24). He testified that he sent Mr. Shives to the document depository to look for evidence concerning coverage and that he partially relied upon information provided by Mr. Shives as part of his analysis of coverage. *Id.* at 210:11. Based upon this testimony, the Gurrs conclude that Mr. Shives was acting as a coverage investigator and not an attorney; therefore, his communications in the claim file are not protected by the attorney-client privilege and must be produced.

National Fire contends that Mr. Shives was retained as its counsel on August 17, 2005; thus, documents bearing his name and that of his law firm which are found in the claim file are protected by

5

the attorney-client privilege, except for those circulated to non-clients (#34, Shives affidavit). Moreover, Mr. Shives attests that he never visited the document depository, but that he did review documents after settlement of the Justus I and Justus II cases. *Id.* He further attests that he reviewed documents as litigation counsel for the insurance carriers (1) in connection with his evaluation of the coverage issues in Justus I and Justus II and (2) in connection with the present litigation. *Id.*

The court acknowledges that the claim file in an insurance bad faith action contains critical evidence regarding the investigation, analysis, and ultimate decision regarding an insured's claim. *See Brown v. Superior Court,* 670 P.2d 725, 734 (Ariz. 1983); *Dion v. Nationawide Mutual Ins. Co.,* 185 F.R.D. 288, 293 (D. Mont. 1998); *see also Schmidt v. California State Automobile Assn.,* 127 F.R.D. 182, 183 (D.Nev. 1989) (entire claim file is not shielded by the attorney-client privilege because not all of the material within claim file contains attorney-client privileged information). National Fire concedes as much and has produced a substantial portion of the claim file (#34). The question here is whether the testimony of Mr. Ratz transforms Mr. Shives's otherwise privileged communications into a discoverable portion of the claim file. Having considered the evidence, the court is not convinced that Mr. Shives served as a claims handler or administrator. While Mr. Ratz certainly agreed with the general proposition that the claim file typically reveals how an insurer processes a claim, he also testified that it was he who made the ultimate decision about the disposition of the Gurrs' claim. There is a factual dispute concerning whether Mr. Shives ever visited the document depository at Mr. Ratz's direction or otherwise, and Mr Shives has provided his affidavit attesting that he is National Fire's attorney. The fact that Mr. Ratz may have relied on counsel in evaluating a claim is predictable and routine. There is nothing more in the record to suggest that Mr. Shives served National Fire in any capacity other than as counsel, and the limited excerpts of Mr. Ratz's deposition do not transform Mr. Shives from coverage counsel to the far more expansive role of claims handler or claims administrator. Based on the foregoing, the court denies the Gurrs' motion to compel production of the Shives documents identified in footnote 1 of their motion.

### C.   The National Fire Communications (#32, n.2)

The second group of documents at issue are communications between J. Michael Gottschalk, Nancy Peters, and others employed by National Fire (#32, n. 2; Ex. C). It is undisputed that Mr. Gottschalk is a licensed attorney and vice-president of claims for National Fire and that Ms. Peters serves as corporate counsel for National Fire (#34, affidavit of Martin Shives). Mr. Ratz testified that he did not know what Ms. Peters did in regard to the Gurrs' claim, but he stated that her involvement was not in the claims handling side of the action (#32, Ex. G at page 91, lines 24-25; 92:1-16). The only reference to Mr. Gottschalk in the deposition excerpt provided by the Gurrs is that an individual named Carol Albaugh-Manning is Mr. Gottschalk's assistant. *Id.* at 93:22-25. The Gurrs' only contentions with respect to these documents are the conclusory statements that Mr. Gottschalk and Ms. Peters were not acting as counsel, but in some administrative capacity, and that the communications do not appear to be directed by an attorney after consultation. The court has reviewed each of disputed entries, and it appears that the communications are between National Fire's in-house counsel and National Fire employees. It is not unusual that a claim file will contain attorney-client privileged material, as well as information protected under the work product doctrine and/or created in anticipation of litigation. Absent additional factual or legal support, the court will not compel production of these documents.

### D.   Other Claim Documents (#32, n. 3)

The final group of documents are denominated as "other claim documents" and consist of communications by National Fire's counsel, drafts of complaints and letters of credit, documents concerning settlement authority and value analysis, and billing information and payments to Mr. Shives's law firm. National Fire asserts these documents are protected based on the attorney-client privilege, work product doctrine, that they are prepared in anticipation of litigation, that some documents are proprietary, or are protected by a right of privacy. With respect to a limited number of documents, National Fire asserts the documents are only protected by a right of privacy or are not relevant. *See, e.g.,* #32, Ex. C, #NF002324, #NF002339.

Since the court has rejected the Gurrs' argument that the documents were improperly withheld on the basis of attorney-client privilege, the work product doctrine, and in anticipation of litigation, the

court will not compel National Fire to produce those documents. The court notes that although National Fire claims some documents are proprietary or protected by a right of privacy, it does so in conjunction with the other privilege-related objections; therefore, the court need not consider the scope and nature of what is deemed proprietary or private. As to those few documents National Fire asserts only right of privacy or contends the documents are not relevant, counsel have not briefed these issues specifically. To the extent these few documents are still in dispute, the court directs counsel to meet and confer in an attempt to resolve their differences, since these documents are *de minimus* in comparison to the volume of other documents in dispute.

### E. The Detail of Description in the Privilege Logs

As earlier noted, National Fire has produced three versions of its privilege log over the course of this dispute, and it has done so in response to the Gurrs' concerns that prior privilege logs were not adequately descriptive and also because some documents were discovered after the original production and prior to the deposition of Mr. Ratz. The court has reviewed the privilege logs and finds that National Fire has met its *prima facie* burden of demonstrating that information sought is protected by the attorney-client privilege, the work product doctrine, or that they were prepared in anticipation of litigation. *Diamond State Ins. Co. v. Rebel Oil Co.,* 157 F.R.D. 691, 698 (D.Nev. 1994). National Fire has also complied with the basic requirements of a privilege log by providing (a) the attorney and client involved, (b) the nature of the document, (c) the persons or entities shown to have received or sent the document, (d) all persons or entities known to have been furnished the documents or informed of their substance, and (e) that date the document was prepared, generated, or dated. *Id.* (citations omitted).

The court is mindful that the Gurrs will have a second opportunity to depose Mr. Ratz now that they are in possession of additional documents. The court is also mindful that the Gurrs intend to depose other National Fire employees, including Reed Grandgenett, who was also involved in the claims handling which gives rise to this action (#46). This discovery may well yield the evidence the Gurrs legitimately seek concerning their bad faith claim in this case.

### III. Conclusion

Based upon the foregoing, the Gurrs' motion to compel production of documents (#32) is **DENIED.** Although the court stated on the record at the October 2, 2006 hearing that the Gurrs' motion for sanctions is denied, the court takes this occasion, and **DENIES** the Gurrs' motion for sanctions.

**IT IS SO ORDERED.**

DATED: October 18, 2006.

*[signature: Valerie P. Cooke]*

UNITED STATES MAGISTRATE JUDGE